```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW HAMPSHIRE
```

**Hitchiner Manufacturing Co., Inc.**

   **v.**                                                             Case No. 09-cv-242-PB
                                                                      Opinion No. 2009 DNH 163

**Modern Industries, Inc.**

### MEMORANDUM AND ORDER

Hitchiner Manufacturing Co., Inc. ("Hitchiner") seeks an injunction compelling Modern Industries, Inc. ("Modern") to participate in an arbitration proceeding before the American Arbitration Association ("AAA").  In the alternative, Hitchiner seeks leave to amend its complaint to assert claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment.  For the reasons set forth below, I deny Hitchiner's request to compel arbitration and grant it leave to amend its complaint.

### I. BACKGROUND

Hitchiner, a manufacturer and marketer of metal components and assemblies, entered into several agreements with Modern, a supplier of production machining, heat treating, and hydraulic

products.  (Pl.'s Mem. of Law in Supp. of Mot. for Prelim. Inj. Compelling Arbitration, Doc. No. 8-2, at 2.)  Over the course of an approximately seven-year relationship, Modern placed orders and purchased numerous parts from Hitchiner.  (Sweny Aff., Doc. No. 9-2, at ¶ 3.)  Hitchiner alleges that Modern has defaulted on its obligations under two of its agreements with Hitchiner by failing to pay for metal components that it ordered and accepted. (Pl.'s Mem. of Law in Supp. of Mot. for Prelim. Inj. Compelling Arbitration, Doc. No. 8-2, at 2.)

**A.   The Agreements Between Modern and Hitchiner**

On July 30, 2008, Hitchiner sent Modern price quotations concerning the manufacture and sale of heavy duty nozzle ring castings and actuator rods.  (Pl.'s Mem. of Law in Supp. of Mot. for Prelim. Inj. Compelling Arbitration, Doc. No. 8-2, at 2; see Compl. Ex. 1, Doc. No. 1-2.)  In response, Modern submitted two purchase orders, one for actuator rods dated September 19, 2008, and another for nozzle ring castings dated September 24, 2008. Hitchiner later sent Modern order acknowledgments, manufactured the parts, and delivered them to Modern.  (Pl.'s Mem. of Law in Supp. of Mot. for Prelim. Inj. Compelling Arbitration, Doc. No. 8-2, at 3; Compl. Ex. 3, Doc. No. 1-4.)

Hitchiner's price quotations specified that they were "subject to terms and conditions on [the] reverse side hereof." (See Compl. Ex. 1, Doc. No. 1-2.)  In the bottom right-hand corner of the side labeled "Quotation Terms and Conditions" was a provision titled "Arbitration" that read:

> any controversy or claim arising out of or relating to our acknowledgment or any breach thereof, shall be settled in accordance with the Rules of the American Arbitration Association, and judgment upon the award may be entered in any court having jurisdiction thereof.

(Id.)  Modern's purchase orders were not accompanied by such terms and conditions, and did not contain an arbitration provision.  (See Compl. Ex. 2, Doc. No. 1-2.)  Hitchiner's order acknowledgments stated, however, that they were "subject to terms and conditions on [the] last page."  Among these terms and conditions was the aforementioned arbitration provision.  (See Compl. Ex. 3, Doc. No. 1-4.)

## B.  The Arbitration Proceeding

Hitchiner submitted a Demand for Arbitration on April 17, 2009, alleging breach of contract under common law, breach of contract under the Uniform Commercial Code ("UCC"), breach of the covenant of good faith and fair dealing, and unjust enrichment. (See Compl. Ex. 5, Doc. No. 1-6.)  Modern filed its answer on May

15, 2009, and later filed an objection to Hitchiner's selection of Manchester, New Hampshire as the hearing locale, which the AAA denied. (See Compl. Ex. 7, Doc. No. 1-8; Pl.'s Mem. of Law in Supp. of Mot. for Prelim. Inj. Compelling Arbitration, Doc. No. 8-2, at 4; Compl. Ex. 8, Doc. No. 1-9.) On July 14, 2009, Modern submitted its arbitrator ranking to the AAA, and requested additional time to select an arbitrator. (Pl.'s Mem. of Law in Supp. of Mot. for Prelim. Inj. Compelling Arbitration, Doc. No. 8-2, at 4; see Compl. Ex. 9, Doc. No. 1-10.)

Modern then amended its answer on July 15, 2009 to assert that no enforceable agreement to arbitrate existed between Modern and Hitchiner, and that Hitchiner's claim was therefore not arbitrable. (Def.'s Mem. in Supp. of Obj. to Mot. for Prelim. Inj. Compelling Arbitration, Doc. No. 9, at 1; see Compl. Ex. 10, Doc. No. 1-11.) Modern contends that it never discussed arbitration with Hitchiner, and that it never consummated an agreement to arbitrate with Hitchiner. (Def.'s Mem. in Supp. of Obj. to Mot. for Prelim. Inj. Compelling Arbitration, Doc. No. 9, at 1-2.) Hitchiner maintains that the price quotations, purchase orders, and order acknowledgments together formed binding contracts that included the arbitration provision. (See Pl.'s

Mem. of Law in Supp. of Mot. for Prelim. Inj. Compelling Arbitration, Doc. No. 8-2, at 5.)

## II.  **STANDARD OF REVIEW**

Hitchiner has requested a preliminary injunction compelling Modern to participate in the pending arbitration proceeding. Hitchiner's "motion for a preliminary injunction" is properly viewed as a motion to compel arbitration under the Federal Arbitration Act ("FAA"), and I will treat it as such. See 9 U.S.C. § 4. Given the pro-arbitration policy of the FAA,

> it has been established that where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that "an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage."

Intergen N.V. v. Grina, 344 F.3d 134, 143 (1st Cir. 2003) (quoting United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 581 (1960)); see also Berenson v. Nat'l Fin. Servs. LLC, 485 F.3d 35, 43 (1st Cir. 2007).  Arbitration, however, is "a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  Intergen, 344 F.3d at 143 (internal citations

omitted).

While Section 4 of the FAA gives federal district courts the authority to order parties to proceed to arbitration in accordance with their agreement, a court obviously cannot compel arbitration unless it is satisfied that a valid agreement to arbitrate exists. Page v. Mosely, 806 F.2d 291, 295 (1st Cir. 1980), abrogated on other grounds by Shearson/American Express v. McMahon, 482 U.S. 220 (1987). Modern argues that it cannot be compelled to arbitrate its dispute with Hitchiner because the arbitration provision Hitchiner cites never became a part of the contracts between the parties.

### III.  ANALYSIS

Modern can be compelled to arbitrate only if the parties' sales contracts included an agreement to arbitrate. Hitchiner has presented three arguments at different stages of the litigation to support its contention that the contracts contained an arbitration clause. In its complaint, Hitchiner characterized its price quotations as offers and claimed that contracts were formed when Modern submitted responsive purchase orders. (Compl., Doc. No. 1, at ¶ 25.) Because the price quotations

included an arbitration clause, Hitchiner argued, Modern obligated itself to arbitrate when it submitted purchase orders accepting Hitchiner's offers.  Id.  Later, in its motion for a preliminary injunction, Hitchiner argued that Modern's purchase orders were offers that Hitchiner accepted through its order acknowledgments.  It then argued that the contracts incorporated an agreement to arbitrate because Modern submitted its offers in response to price quotations that include an arbitration clause.  (Pl.'s Mem. of Law in Supp. of Mot. for Prelim. Inj. Compelling Arbitration, Doc. No. 8-2, at 5.)  Finally, without abandoning its second argument, Hitchiner argued in a recent telephone conference that Modern bound itself to arbitrate by not objecting to Hitchiner's order acknowledgments even though they included an arbitration clause.  In the discussion that follows, I explain why none of these arguments entitles Hitchiner to the relief it seeks.

The short answer to Hitchiner's first argument is that it has forfeited its right to prevail on this basis by failing to develop its argument in the memorandum it submitted in support of its motion for preliminary injunction.[1]  See, e.g., Rocafort v.

---

[1] It is unlikely that Hitchiner's first argument would succeed even if it had been asserted in its memorandum.  Price

IBM Corp., 334 F.3d 115, 121 (1st Cir. 2003) (arguments raised in complaint but not developed in motion for summary judgment are forfeited).

Hitchiner's second argument is based primarily upon its misinterpretation of Judge Stahl's decision in Polyclad Laminates, Inc. v. VITS Maschinenbau GmbH, 749 F. Supp. 342, 345 (D.N.H. 1990). In that case, the seller included an arbitration clause in both its price quotations and its order acknowledgments. The buyer's purchase orders did not expressly address the issue of arbitration, but they did state that the terms and conditions of the purchase orders "are those set forth below, those preprinted or added to the face of this purchase order and those which are contained in attachments or exhibits attached hereto, or referenced herein." Id. at 343 (emphasis in original). As Judge Stahl noted, at least one of the purchase

---

quotations are usually not viewed as offers. See, e.g., Boise Cascade Corp. v. Reliance Nat'l Indem. Co., 129 F. Supp. 2d 41, 44 (D. Me. 2001); Maurice Elec. Supply Co., Inc. v. Anderson Safeway Guard Rail Corp., 632 F. Supp. 1082, 1087 (D.D.C. 1986); Taft-Peirce Mfg. Co. v. Seagate Tech., Inc., 789 F. Supp. 1220, 1223 (D.R.I. 1992). More importantly, Hitchiner's price quotations preserve Hitchiner's right to accept or reject Modern's purchase orders for any reason. (See Compl. Ex. 1, Doc. No. 1-2.) Thus, the price quotations themselves appear to be invitations to submit offers rather than offers that Modern could accept by submitting purchase orders.

orders (which the court construed as offers), cited an order of confirmation from the seller which in turn referenced a form that contained an arbitration clause.  Id.  As a result, Judge Stahl held that the arbitration clause was enforceable because the buyer incorporated the arbitration clause in its offer to purchase.  Id. at 345.

In relying on Polyclad, Hitchiner fails to note that the court enforced the arbitration agreement in that case because the buyer included the arbitration clause by reference in its offer to purchase.  When the seller later accepted the buyer's offer through an order confirmation that also included an arbitration clause, the parties clearly bound themselves to submit their disputes to arbitration.  See id.  In this case, however, Modern's purchase orders did not incorporate by reference either Hitchiner's price quotations or its order confirmations.  Accordingly, Hitchiner cannot prevail on the basis of Polyclad.

In a last ditch effort to salvage its arbitration claim, Hitchiner argued during a telephone conference on October 6, 2009, that the arbitration clause in the order acknowledgments was incorporated into the contracts, even if the order acknowledgments are treated as acceptances and the arbitration clause is treated as an "additional term" under Section 2-207 of

New Hampshire's version of the Uniform Commercial Code.  In relevant part, Section 2-207, which governs "Additional Terms in Acceptance and Confirmation," reads as follows:

> (1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
>
> (2) The additional terms are to be construed as proposals for addition to the contract.  Between merchants such terms become part of the contract unless:
>> (a) the offer expressly limits acceptance to the terms of the offer;
>> (b) they materially alter it; or
>> (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

N.H. Rev. Stat. Ann. § 382-A:2-207(1)-(2) (1994).

If the purchase orders in this case are treated as offers, and the order confirmations are treated as acceptances, the arbitration clause is clearly an "additional term" under Section 2-207.  Further, because arbitration clauses added in an acceptance ordinarily are deemed to materially alter a contract, they do not become a part of the contract under Section 2-207. See § 382-A:2-207(2)(b); Polyclad, 749 F. Supp. at 344 (following the "majority view" that a proposal to arbitrate materially alters a contract); Supak & Sons, Mfg. Co. v. Pervel Indus.,

Inc., 593 F.2d 135, 136 (4th Cir. 1979); Aceros Prefabricados, S.A. v. TradeArbed, Inc., 282 F.3d 92 (2d Cir. 2002).

Notwithstanding the plain language of Section 2-207, Hitchiner invokes Comment 6 to that section to support its argument that Modern obligated itself to arbitrate by failing to object to Hitchiner's inclusion of the arbitration clause in the order acknowledgments.[2] I am unpersuaded by this argument.

Comment 6 appears to address only non-material terms that do not contradict the terms of the offer. With respect to such terms, it is correct to say, as Comment 6 does, that "a failure

---

[2] Comment 6 reads as follows:

> If no answer is received within a reasonable time after additional terms are proposed, it is both fair and commercially sound to assume that their inclusion has been assented to. Where clauses on confirming forms sent by both parties conflict each party must be assumed to object to a clause of the other conflicting with one on the confirmation sent by himself. As a result the requirement that there be notice of objection which is found in subsection (2) is satisfied and the conflicting terms do not become a part of the contract. The contract then consists of the terms originally expressly agreed to, terms on which the confirmations agree, and terms supplied by this Act, including subsection (2). The written confirmation is also subject to Section 2-201. Under that section a failure to respond permits enforcement of a prior oral agreement; under this section a failure to respond permits additional terms to become part of the agreement.

§ 382-A:2-207 cmt. 6.

to respond permits additional terms to become part of the contract." § 382-A:2-207 cmt. 6.  I cannot adopt Hitchiner's more expansive interpretation of Comment 6, however, without disregarding the plain statement in Section 2-207(2) that exempts additional terms from becoming part of a contract if they "materially alter" the contract.  See § 382-A:2-207(2)(b). Because commentary cannot be used to contradict a statute's plain meaning, I decline to adopt Hitchiner's argument.

## IV.  CONCLUSION

For the foregoing reasons, I deny Hitchiner's motion to compel arbitration (Doc. No. 8).  Hitchiner has ten (10) days from the date of this order to amend its complaint to include the allegations contained in its arbitration demand.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

October 30, 2009

cc:   George P. Butler, III, Esq.
      Leslie Calhoun, Esq.
      Steven J. Dutton, Esq.
      Kelleigh D. Murphy, Esq.
      Mark C. Rouvalis, Esq.
      L. Pahl Zinn, Esq.